## UNION OF SOVIET SOCIALIST REPUBLICS v. NATIONAL CITY BANK OF NEW YORK.

District Court, S. D. New York.
Sept. 26, 1941.

354

Charles Recht, of New York City (Osmond K. Fraenkel, of New York City, of counsel), for plaintiff.

Shearman & Sterling, of New York City (Otey McClellan, P. A. Carroll, and M. V. Voorhies, all of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

The complaint herein alleges that plaintiff is the successor in interest of the Russian Socialist Federated Soviet Republic which in 1918 entered into an agreement with one Cibrario by reason of which plaintiff's predecessor caused to be deposited with the defendant in New York a million dollars. It further alleges that defendant has failed to pay out and disburse the money in accordance with the terms of said contract and that defendant has failed to pay said deposit or account for it to plaintiff.

Two issues are now before the Court for determination, both of which defendant contends merit the dismissal of the complaint. The first is based upon defendant's claim that plaintiff is not the real owner of the claim, assuming one to exist, and the second that, suit not having been commenced until April 30, 1937, any claim is barred by the six year contract limitation prescribed by New York law. Civil Practice Act, § 48.

It appears that at the time of the recognition of the Soviet Union by the United States on November 16, 1933, there was an exchange of letters between Maxim Litvinoff, the then People's Commissar for Foreign Affairs of the plaintiff and the President of the United States, whereby the Soviet Government assigned to the United States of America the claims which it might have against nationals of the United States. Because of this compact defendant contends that the Soviet Union is no longer the real owner of the claim and hence is not entitled to sue thereon. It further appears, however, that the United States speaking through the Secretary of State, in a note dated June 3, 1939 addressed to the Charge d'Affaires of the plaintiff in this country, and dealing with this very cause of action, stated as follows: "In view of the nature of the transaction outlined in your note it is the understanding of my Government that it was not the intention either of the Government of the United States of America or of the Government of the Union of Soviet Socialist Republics to include this deposit within the assignments embodied in the exchange of notes of November 16, 1933 between the President of the United States and Mr. Litvinoff".

Our government, as is well known, is one based upon a separation of powers among three different branches of the government. Subject to the advice and consent of the Senate, the matter of foreign affairs rests in the executive department of our government, U.S.Const. Art. II, Section 2. Here we find that the executive department states conclusively that the United States has no interest in the claim and that it was not intended to be embraced within the compact of November 16, 1933. While, normally, the judicial department has within its particular province the interpretation of laws, yet the interpretation of the scope and extent of an international compact in so far as it relates to the rights of international sovereigns as against each other is a matter in which the executive's interpretation

should be accepted as binding by the Courts. In view of the clear expression of opinion by the Secretary of State, in which it might be added the Attorney General concurs, it must be held that the plaintiff is the owner of the claim in question.

There remains for consideration defendant's obligation with respect to the statute of limitations. Since plaintiff's cause of action apparently arose in 1921, it is clearly barred unless there is some basis for regarding the statute as having been tolled. Plaintiff contends that since plaintiff and its predecessor in interest, the Russian Socialist Federated Soviet Republic, were incapable of bringing suit until the recognition of the present Soviet government by the United States in 1933, the statute of limitations should be regarded as tolled during that period of incapacity. Analogy is drawn to the treatment of infancy, insanity, etc., under the New York law.

Aside from the fact that no specific provision of the New York statute of limitation appears to exempt the case at bar from its scope, there are other fatal defects in plaintiff's position. In Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224, a somewhat similar situation came before the United States Supreme Court. In that case the United States, claiming by assignment from the Soviet government, sought to recover certain monies deposited with the Guaranty Trust Company by the old Russian Imperial Government. Since the six year statutory period had elapsed between the time the cause of action had accrued and the time it was assigned to the United States, the statute of limitations was pleaded as a defense. The Court sustained the defense, pointing out that although the Soviet government could not sue, there existed throughout the period in question "a government in exile" recognized by the United States which could sue on behalf of "the Russian State".

The present case varies from the Guaranty Trust Company case only in that the deposit upon which suit is brought was made not by the old Imperial Government but by the unrecognized revolutionary government. If however, the theory of the Guaranty Trust Company case is, as it appears to be, that the claim rests in "the Russian State" and not in any particular government thereof, then the holding of that case should be equally applicable herein.

There is, moreover, a further reason adverted to in the Guaranty Trust Company case which lends support to this conclusion. One of the results of non-recognition of a foreign government is its incapacity to bring suit in our courts. Were it decided that during that period of non-recognition the statute of limitations was merely tolled and did not run, one of the most effective sanctions of non-recognition would lose most of its value. It always rests within the power of a foreign government to secure recognition by complying with the requests of our government. If, under such circumstances, the foreign government chooses to remain unrecognized, it must take with it the consequences in the form of incapacity to sue in our courts which may include loss of substantive rights.

Judgment for defendant. Settle findings and decree on notice.